**William KNAPP, Plaintiff,**

v.

**Robert MILLER, et al., Defendants.**

**No. CV–N–92–170.**

United States District Court,
D. Nevada.

Nov. 2, 1993.

Donald York Evans, Reno, NV, and Belli, Belli, Brown, Monzione, Fabbro & Zakaria, San Francisco, CA, for plaintiff.

Frankie Sue Del Papa, Atty. Gen., Carson City, NV, for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

Plaintiff in this action was a classified employee with the State of Nevada and entitled to the protections found in Chapter 284 of the Nevada Revised Statutes, which also gave him, as a permanent employee, a protected property interest in his job. Plaintiff was fired from his job as Principal Psychologist with the Nevada Department of Prisons (NDOP) after he initiated and pursued a business venture in a western theme-park brothel.[1] Plaintiff was subsequently reinstated with back pay pursuant to an appeal to the administrative hearing officer for the Nevada State Personnel Commission. The hearing officer found that the action of the employer in dismissing the employee from the classified service of the State of Nevada had not been established by substantial, reliable and probative evidence as being for the good of the public service. However, the hearing officer did find that plaintiff violated NAC 384.656(1) (sic)[2] by engaging in activity that has been determined to be conflicting with plaintiff's duties and responsibilities pursuant to NAC 284.738 and that plaintiff violated Administrative Regulation 355 governing secondary employment.[3] The hearing

---

1. Plaintiff involved prisoners in the scheme, through a prison "hobby program" by employing them to assist in the production of solicitation literature.

2. The Findings of Fact, Conclusions of Law and Decision rendered by the hearing officer consistently refers to the "violation of NAC 284.656(1) for activity which is incompatible with an employees conditions of employment established by law or which violated a provision of NAC 284.-653 or 284.738 to 284. 771." The correct citation should be to NAC 284.650(1) (Causes for disciplinary action—activity which is incompatible with employment)

3. AR 355 requires any NDOP employee who "plans" on engaging in secondary employment submit notice to the department.

officer further ordered that the employer, pursuant to the principles of progressive discipline, NRS 284.383 and Administrative Regulation 344, should have the option to appropriately discipline the employee within the guidelines prescribed by the employer for willful and deliberate violation of a regulation, to wit: a suspension without pay or a demotion. Pursuant to this ruling by the hearing officer, plaintiff was reinstated with NDOP to the demoted position of Senior Psychologist (one position lower than his previously held position as Principal Psychologist), with a reduction in salary (of approximately $200 bi-weekly).

The complaint (First Amended Complaint, document # 27b) alleges seventeen causes of action, three of which allege violations of 42 U.S.C. § 1983—violation of civil rights. Specifically, the plaintiff alleges that the defendants have violated his constitutional rights of freedom of speech and association by pursuing a lawful business enterprise with his wife Margaret K. Knapp [4]. It is alleged that Defendant Miller ordered Defendant Angelone to terminate plaintiff without cause or justification. It is also alleged in the fifth cause of action that the state has unilaterally (and in retaliation) demoted the plaintiff following a ruling by the administrative hearing officer in favor of the plaintiff in which the plaintiff was ordered to be reinstated with back pay. The sixth cause of action alleges that the plaintiff's demotion was without any attempt at due process, hearing or notice. In addition, plaintiff: 1) seeks a mandatory injunction requiring the Department of Prisons to grant the plaintiff due process regarding any demotion; 2) alleges that Administrative Regulation 355 is unconstitutional on its face or as applied and seeks declaratory relief and a finding by this court that AR 355 is unconstitutional.[5] The balance of causes of action all allege state law claims. The defendants in this action are Robert Miller (Gover-

nor of Nevada), Ron Angelone (Director of Prisons), George Kaiser (Medical Director of NDOP) and Ray Procunier (Inspector General of NDOP). Defendants have filed a motion to dismiss or in the alternative a motion for summary judgment alleging that plaintiff's first amended complaint fails to state a claim for which relief can be granted based on plaintiff's allegations of first amendment violations. (document # 30). The Court takes into consideration the affidavits and other documentation submitted with defendants' motion and will treat said motion as a motion for summary judgment.

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.,* 521 F.2d 1129 (9th Cir.), *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). The moving party is entitled to summary judgment as a matter of law where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute. Fed. R.Civ.P. 56(c); *Semegen v. Weidner,* 780 F.2d 727 (9th Cir.1985). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang,* 711 F.2d 141 (9th Cir.1983).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

---

4. Margaret Knapp is also a previous state employee. She has filed a separate suit based on the same facts.

5. Plaintiff has in error pled the regulation which it wishes to challenge as AR 344 ("Employee Disciplinary Penalties"—a regulation that provides a uniform guideline for the imposition of penalties) instead of AR 355 which addresses

with the requirements of employees planning to engage in secondary employment. Plaintiff brought this error to the attention of the Court and the Defendants for the first time in its opposition to summary judgment. Defendants oppose consideration of this argument as it is untimely made. This issue is addressed later in this Order.

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson, supra.* As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248, 106 S.Ct. at 2510. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex, supra.*

Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.* When faced with a motion for summary judgment, the material before the court "must be viewed in the light most favorable to the [non-moving] party." *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In order to state a § 1983 claim, plaintiff must plead that 1) the defendants acted under color of state law and 2) the defendants deprived the plaintiff of rights secured by the constitution or federal statutes. *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1313–14 (9th Cir.1989). Plaintiff claims that conceiving the idea of the western brothel, acting with his wife on that idea, mailing out advertisements, solicitations and communication in furtherance of that idea is a protected First Amendment activity that cannot be a basis for his discharge and subsequent demotion. Defendants assert that Plaintiff fails to state a claim under the First Amendment or the Fourteenth Amendment based on his allegations of freedom of speech and right to association.

The parties' motions in this case confuse the law, the standards to be applied, and in some instances even the procedural history of this case (*e.g.* Plaintiff's incorrect assertion that defendants have not filed an answer to the complaint). The Court will attempt to put some "order" to this matter.

## A. FREEDOM OF SPEECH

 Whenever a statute or state action, allows some person to speak or assemble but not others, or grants a subsidy for some forms of speech but not others, the statute or action can be analyzed under equal protection as well as first amendment principles. The government may classify persons for the receipt of benefits or burdens so long as there is a rational relationship between the classification and a legitimate end of government. However, if the law employs suspect criteria, such as race, to establish the classification, or if the law creates a classification which allocates to only particular persons the ability to exercise a fundamental constitutional right, then the Court will strictly scrutinize the basis for that classification. It is difficult to describe the exact standard of review in these cases, but it is most often said that when a law regulates the ability to engage in a fundamental constitutional right, the courts must determine whether the classification is narrowly tailored to promote a compelling or overriding governmental interest. All first amendment rights are fundamental rights and, therefore, classifications relating to them are subject to this compelling interest standard.

In the case of public employees however, the guidelines with regard to imposing restrictions upon public employment defy usual first amendment analysis. It has been recognized that the government has legitimate interests in regulating the speech of its employees that differs significantly from its interest in regulating the speech of people generally. *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The traditional view was that public employment was a privilege rather than a right. *See Adler v. Board of Education,* 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952) and that while a person may "... have the constitutional right to talk politics ... he has no constitutional right to be a policeman." *McAuliffe v. New Bedford,* 155 Mass. 216, 29 N.E. 517, 517 (Justice Holmes, 1892); The subsequent erosion of

the doctrine that public employment, as a mere privilege, could be conditioned upon a surrender of constitutional rights, has forced a reexamination of *Adler* and eventually removed *Adlers's* constitutional underpinnings.

▮▮▮ Under current law, a state may not condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression. *See e.g. Keyishian v. Board of Regents, supra,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). The inquiry into the protected status of speech is one of law, not fact.

> [The Court is] compelled ... to examine the statements in issue and the circumstances under which they are made to see whether or not they ... are of a character which the principles of the First Amendment, as adopted by the Due Process Clause of the Fourteenth Amendment, protect." *Pennekam v. Florida,* 328 U.S. 331, 335, [66 S.Ct. 1029, 1031, 90 L.Ed. 1295] (1946).

The Supreme Court has frequently reaffirmed that speech on "public issues" occupies the "highest rung of the hierarchy of First Amendment values" and is entitled to special protection. *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 913, 102 S.Ct. 3409, 3426, 73 L.Ed.2d 1215 (1982). The theory is that "the First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *New York Times Co. v. Sullivan,* 376 U.S. 254, 269, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964). Speech concerning public affairs is more than self-expression; it is the essence of self government." *Garrison v. Louisiana,* 379 U.S. 64, 74–75, 85 S.Ct. 209, 215–16, 13 L.Ed.2d 125 (1964).

▮▮▮ Likewise the Court has found that matters of "legitimate public concern" upon which "free and open debate is vital to informed decision making by the electorate" is also protected. *Pickering v. Board of Education,* 391 U.S. at 571–572, 88 S.Ct. at 1736–1737, 20 L.Ed.2d 811. In *Pickering* a balancing test was established to determine the protection due to an employees speech. If an employee's speech is deemed to be of public concern, in determining the employ-

ee's right of free speech it is necessary to arrive at a balance between the interest of the employee as a citizen in commenting on a matter of public concern and the interest of the state as an employer in promoting the efficiency of the public service it performs through its employees. *Id.*

▮▮▮ Whether or not speech may be fairly characterized as constituting speech on a matter of public concern must be determined by the content, form and context of a given statement. An .employee's expression may be fairly characterized as constituting expression on a matter of public concern when it "relates to any matter of political, social or other concern to the community." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708. Examples of speech found by the courts as amounting to matters of public concern and thereby protected include: comments regarding the attempted assassination of the president ("If they go for him again, I hope they get him.") *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); a high school teacher's open criticism of the Board of Education on fund allocations between athletics and education and the methods used of informing the taxpayers of the need for additional revenue *Pickering, supra.;* a volunteer of the city juvenile probation department's memo criticizing the operation of the juvenile department *Hyland v. Wonder,* 972 F.2d 1129 (9th Cir.1992); a probationary police officer publicly criticizing city's decision not to give police officers an annual raise. *McKinley v. City of Eloy,* 705 F.2d 1110 (9th Cir.1983).

On the other hand it has been found that discharge of a former assistant district attorney did not violate her constitutionally protected first amendment right of free speech where the District Attorney proposed to transfer the attorney, she strongly opposed transfer, expressing her view to several of her supervisors she thereafter prepared a questionnaire which she distributed to other attorneys concerning office transfer policy, office morale, need for grievance committee, level of confidence in supervisors and whether employees felt pressure to work in political campaigns. The Court held in that case that the questions posed in questionnaire,

with the exception of the question regarding political campaigns did not fall under the rubric of public concern. The Court further held that to the limited extent that it (the survey) did touch upon matters of public concern, the survey was more accurately characterized as an employee grievance concerning internal office policy and the "limited First Amendment interest involved" did not require that the District Attorney tolerate action which he reasonably believed would disrupt the office, undermine his authority and destroy close working relationships. *Connick supra.*

Plaintiff asserts that because legalized prostitution is such a hotly debated public issue, that his activities also can be characterized as a matter of public concern and thereby entitled to special protection. This assertion is without merit. The fact that the legality of prostitution is a controversial issue is not sufficient to bring any comment or activity relating to legalized prostitution into the ambit of public concern. Plaintiff's purpose was not to engage in or provoke political debate, nor were his actions an expression of his opinion. The form of plaintiffs speech was solicitation, the context was in the pursuance of a business opportunity, the content of his speech was not commentary but rather a sales pitch. This Court therefore concludes that Plaintiff's speech is not of public concern as traditionally defined by the courts.

The question then is, whether or not plaintiff's speech is of a character which the principles of the First Amendment, as adopted by the Due Process Clause of the Fourteenth Amendment, protect. While plaintiff's flyers do not amount to public concern, neither do they fall into the traditionally unprotected categories of speech such as obscenity and "fighting words." Nor does plaintiff's speech fall in the category of a personal grievance that is of no consequence to the public so that a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. *Rankin,* 483 U.S. at 384 n. 7, 107 S.Ct. at 2897 n. 7.

The Court is unconvinced with defendants' assertion that plaintiff's speech is unprotected as it is not of public concern. The First amendment does not protect speech and assembly only to the extent it can be characterized as political. Great secular causes, with smaller ones are guarded. *Mine Workers v. Illinois Bar Association,* 389 U.S. 217, 223, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967) quoting *Thomas v. Collins,* 323 U.S. 516, 531, 65 S.Ct. 315, 323, 89 L.Ed. 430 (1945). Generally, when public employees engage in expression unrelated to their employment while away from their workplace, their first amendment rights are no different from those of the general public. *Pickering,* 391 U.S. at 574, 88 S.Ct. at 2107. However, plaintiff's speech in this case cannot be easily dismissed in this manner either. Plaintiff's expression was related to his employment in that the content and context of his speech may have an adverse impact on the government's ability to perform its duties efficiently. "The overt, open activity of the employee in pursuit of his brothel—albeit a legal brothel—did cause discredit to the employer and did impact the employee's performance of his state duties by virtue of the prison's population being aware of this scheme." (Findings of Fact Conclusion of Law and Decision of Hearing Officer, p. 42). The Court therefore concludes that under the facts of this case, defendant's speech is protected to a degree and deserves to be weighed against the interests of the state. It is the view of this Court, that in these circumstances, the balancing test of *Pickering* should be applied even though the employee's speech does not amount to a matter of public concern in the traditional sense. As stated above, under *Pickering* the scope of the public employee's First Amendment rights must be determined by balancing the interest of the employee and the interest of the State, as an employer in promoting the efficiency of the public services it performs through its employees.

Before applying this test in the case at hand, it is relevant to consider that expression that is solely related to the economic interests of the speaker or speech proposing a commercial transaction is de-

fined as commercial speech. *Central Hudson Gas & Electric v. Public Service Commission*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Plaintiff's flyers providing three-for-one coupons and newspaper advertisements constitute commercial speech. Commercial speech, if it concerns a lawful activity and is not misleading is protected. However, if commercial speech only is threatened, the requirements of the First Amendment are less rigorous. *Id.* at 562, n. 5, 100 S.Ct. at 2349, n. 5. Commercial speech is afforded a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values.

Thus, the Court finds that plaintiff does have a limited First Amendment interest in his speech and that the analysis that is generally applied to speech of public concern, can properly be applied in this case.

The Ninth Circuit applies an established three-part test to determine whether constitutional rights have been violated based on terminations that allegedly violate the First and Fourteenth Amendments. Pursuant to this test the plaintiff must establish: 1) that the conduct at issue was entitled to constitutional protection; and 2) that the constitutionally protected conduct was a substantial or motivating factor behind the termination. Once the terminated employee has established the first two elements, the employer must prove that it would have made the same decision to terminate even if the employee had not engaged in the protected conduct. *See Erickson v. Pierce County*, 960 F.2d 801, 804 (9th Cir.1992); citing *Mt. Healthy City School District Board of Education*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

In this case, plaintiffs have demonstrated that their conduct was entitled to constitutional protection, albeit limited. Further, the Court in considering the evidence in the light most favorable to the plaintiff finds that it was this constitutionally protected conduct that was the factor behind the decision to terminate and demote. Plaintiff has stated a valid claim for the violation of free speech under 42 U.S.C. § 1983.

## B. RIGHT OF ASSOCIATION

The plaintiff's first amended complaint also alleges that his constitutional rights of association, by pursuing a lawful business enterprise, have been violated. Freedom of association for the purpose of advancing ideas and airing grievances is now protected by the due process clause of the Fourteenth Amendment from invasion by the States.

"It is beyond debate that the freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the liberty ensured by the Due Process Clause of the Fourteenth Amendment which embraces freedom of speech."

*NAACP v. State of Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958) (the effect of compelled disclosure of membership lists abridged the rights of the association rank and file members to engage in lawful association in support of common beliefs). When referring to "freedom of association" the Supreme Court has differentiated between those cases involving intimate human relationships which constitute freedom of association and receive protection as a fundamental element of personal liberty and those cases involving the right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances and the exercise of religion. *Roberts v. United States Jaycees*, 468 U.S. 609, 617–618, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984).

The Ninth Circuit refers to the rights of association as "intimate association" and "expressive associations." *I.D.K., Inc. v. Clark County*, 836 F.2d 1185, 1193 (9th Cir.1988).

Plaintiff refers to the intimate right of association as the kind of association that "is none of the State's business" and includes his own entrepreneurial efforts in this category. Plaintiff's position is that the firing of plaintiff violated this right. However, the line of cases that address intimate association refer to those associations that relate to the creation and sustenance of a family and similar highly personal relationships. *Id.* at 1193, citing *Roberts, supra*, 468 U.S. at 618–619,

104 S.Ct. at 3249–3250. Plaintiff's effort to fit his business associations with these cases fails.

 Plaintiff's association was to achieve economic goals that are unconnected to any fundamental constitutional right. While many associations cannot be readily described as purely expressive or purely commercial, plaintiff's association in this case was primarily a commercial enterprise that only incidentally exercised first amendment rights. The ability to control one's economic associations is a part of the liberty protected by due process, but the court will not substitute its judgment for the States as to the legitimate basis for restricting such types of association. So long as the state is rationally promoting an arguably legitimate government goal by restricting the activities of a business association, the Court will not invalidate such action.

Plaintiff has come forward with evidence that his conduct and expression is entitled to limited constitutional protection. It would be inappropriate for this Court to determine on summary judgment at this time whether the can meet the fairly light burden of showing that its interest in running the prison system efficiently is related and outweighs plaintiff's interests. Further, defendants may not hide behind the assertion that it was plaintiff's failure to comply with NDOP regulations that was the motivating factor behind plaintiff's dismissal. AR 355, the one substantive regulation plaintiff violated, directly restricts the conduct we have found deserving of some constitutional protection. Moreover, albeit in an untimely manner, plaintiff has challenged the constitutionality of that regulation (AR 355). Rather than dismiss this allegation on procedural grounds, the Court will allow the defendants additional time to respond to this claim. It appears that appropriate disposition of this case hinges on whether or not AR 355 is appropriate in that it 1) is rationally related to serving a state interest that outweighs the plaintiffs interest and 2) is not unconstitutionally vague or overbroad.

IT IS, THEREFORE, HEREBY ORDERED that Defendants Motion for Summary Judgment (document #30) is DENIED.

IT IS FURTHER ORDERED THAT DEFENDANTS shall have 30 days which to file points and authorities responding to plaintiff's allegations regarding the unconstitutionality of AR 355. If defendants so desire, they may at that time renew their motion for summary judgment and include points and authorities as to why and how the interests of the state outweigh the employee's limited First Amendment rights in this matter. Plaintiff shall have 15 days to reply to any motion filed by defendants pursuant to this Order.