Edward N. PHILLIPS,
Plaintiff-Appellant,

v.

Alvis VANDYGRIFF, et al.,
Defendants-Appellees.

No. 81–1552.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1984.

serve as evidence of an official policy or custom of the City of Center to deny municipal services to black residents.

Jack N. Price, Austin, Tex., for plaintiff-appellant.

J. David Griffin, W. Ted Minick, Dallas, Tex., for Exchange Sav. and Loan Ass'n.

C.C. Small, Jr., Austin, Tex., for North Texas Sav. & Loan Ass'n.

James Vincent Sylvester and Yolanda Martin McKeeman, Asst. Attys. Gen., Austin, Tex., for Vandygriff, et al.

John Guittard, Dallas, Tex., for First Sav. and Loan Ass'n. of Bowie.

Barry K. Bishop and David C. Duggins, Austin, Tex., for First Federal Sav. & Loan Ass'n. of Luling.

T.P. Flahive, Austin, Tex., for Paris Sav. & Loan.

Walter H. Mizell and Michael G. Mullen, Austin, Tex., for Mainland Sav.

## ON PETITIONS FOR REHEARING AND SUGGESTIONS FOR REHEARING EN BANC

(1983, 5 Cir.1983, 711 F.2d 1217)

Before BROWN, GOLDBERG and HIG-GINBOTHAM, Circuit Judges.

### PER CURIAM:

In our original opinion, we reversed the judgments that had been entered for defendant Vandygriff and certain of the savings and loan association defendants on the claims charging violation of section 1983 and unlawful interference with plaintiff Phillips's livelihood. We affirmed the judgments entered on behalf of defendant Paris Savings & Loan on all claims raised against it, as well as the judgments for all the defendants to the antitrust claims. All parties except Paris S & L now petition for rehearing. Phillips's petition lacks merit and is hereby denied. Except as expressly noted, the petitions of the defendants are also denied, but because they have raised questions as to the scope of our original holding, we take this occasion to address more fully the reach of the de facto licensing doctrine we have enunciated in this case.

The de facto licensing doctrine is, of course, not a guise for the "stigma-plus" cause of action. The stigma-plus line of cases stemming from *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), makes plain that that claim arises when representations made by the defendant injure the plaintiff both in his reputation and in some related, more tangible form that renders the injury compensible. In *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), the Supreme Court held that the representations made by the defendant must be false in order to give rise to a claim under this stigma-plus doctrine. Here, the representations made by Vandygriff about Phillips were found to have been true, and we held accordingly that Phillips could not recover under the stigma-plus theory.

De facto licensing, by contrast, turns not on the ultimate truth or falsity of the representations, but on their absolute exclusionary effect. The injury done to the plaintiff is not in the harm to his reputation per se, but in the denial to him of the hearing to which he would have been entitled under due process were the licensing process actual rather than constructive. From this it follows that a constructive licensing scheme may be discerned only if *approval* by the governmental regulating body or official is the virtual *sine qua non* of employment within the industry, so that the effect on an applicant of this unofficial proceeding is much the same as the effect of an official licensing proceeding.

We have noted in our original opinion that we did not wish to chill any practice by which savings and loan associations

consult with the savings and loan commissioner about the qualifications and reputation of applicants for managerial positions. No one suggests that such a practice does other than ensure the integrity of persons holding positions of trust and responsibility, and thereby serve an important public interest. Such communications also have the benefit of First Amendment protection.

■ Our concern is only that the commissioner's informal endorsement may in practice become a prerequisite for employment within the industry. If so, the applicant, who plainly has a protectable interest in not being arbitrarily or discriminatorily denied the opportunity to practice his profession, *see Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), must be granted the due process protections necessary to uphold that interest.

■ We have declined to determine now the precise scope of the due process rights possessed by an applicant confronting a de facto licensing process. We noted in our original opinion that, at a minimum, due process guarantees to an applicant facing a licensing process notice and an opportunity to be heard. Here, though Phillips received no formal notice, he evinced an awareness of the practice by savings and loan associations to consult with the savings and loan commissioner. Additionally, Phillips was evidently not denied access to Vandygriff to clarify his role in the Sinton S & L incident. In fact, Phillips did ultimately meet with Vandygriff to discuss this matter, and the commissioner thereafter evidently dropped his objections to Phillips's employment within the savings and loan industry. We leave it to the district court, in the first instance, to decide whether this form of accessibility could fulfill the requirements of due process, or whether a more formal type of hearing was required.

■ The defendant savings and loan associations have noted that they were not in a position to grant Phillips a due process hearing, and they therefore urge us to preclude liability on their part. This we cannot do. If Phillips was deprived of his due process rights by Vandygriff's de facto licensing procedure, and if the savings and loan associations participated in that procedure, they can be held liable as co-conspirators.

■ The first question to be addressed by the district court on remand, of course, is whether there in fact existed here a de facto licensing process. In making this determination, the district court should take into account the regularity with which savings and loans sought the commissioner's opinion of prospective managerial employees, the extent to which they followed his recommendations, and the degree to which they believed the commissioner was placing the authority of his office behind his recommendations—particularly, whether the savings and loans believed that they would be prejudiced in their dealings with the commissioner's office if they hired a manager who had not won the commissioner's prior approval. If, taking these elements into account, the district court determines that this system effectively equated to an actual licensing scheme, it should declare that the commissioner was engaged in de facto licensing, and it should then determine what procedural protections were required to be provided the applicants under review.

The distinction is ultimately between a system that imparts information weighed by the hiring agency and a system where hiring turns on the approval of the hiring decision by the state. It is not a matter of semantics or the words used. It is a matter of whether the sum of the evidence is that the state holds a veto over the private hiring decision.

■ North Texas Savings Association argues that the jury's finding that Wright's imparting of information was not a cause of injury to Phillips entitles it to judgment because it obtained information only from Wright. The argument is well taken and the petition for rehearing is granted as to North Texas Savings Association. The judgments for it are affirmed.

No member of the panel nor Judge in regular active service of this Court having requested that the Court be polled on rehearing en banc, the petitions for rehearing and the suggestions for rehearing en banc are DENIED except as expressly granted herein.