**Albert R. PAYNE, Frank Payne**

v.

**Paul FONTENOT, individually and as Superintendent of the State Police for the State of Louisiana, Lieutenant Kendall Fellon, individually and as Head of the Video Gaming Division, Department of Public Safety and Corrections, State Police for the State of Louisiana.**

**Civil Action No. 95–308–B.**

United States District Court,
M.D. Louisiana.

Aug. 16, 1995.

Alexander A. Lambert, Jr., Metairie, LA, for Albert R. Payne, plaintiff, Frank Payne, plaintiff.

Brett Alan Sulzer, Department of Public Safety & Corrections, Office of State Police, Baton Rouge, LA, Tammy L. Pruet, Baton Rouge, LA, for Paul W. Fontenot.

Brett Alan Sulzer, Dept. of Public Safety & Corrections, Office of State Police, Baton Rouge, LA, for Kendall Fellon, defendant.

### RULING ON DEFENDANTS' MOTION TO DISMISS

POLOZOLA, District Judge.

This case requires the Court to determine whether the defendants violated the plaintiffs' constitutional rights when they denied the plaintiffs a video poker license. Finding that no constitutional right has either been violated or is even at issue, defendants' motion to dismiss is granted.

On December 14, 1988, Albert Payne was convicted under 18 U.S.C. § 1955 and § 1511 for operating an illegal gambling business. Six years after Albert's conviction, his son, Frank Payne, applied to the Louisiana State Police, Video Gaming Division ("Division"), for a license to operate video poker devices at his business known as "Frank's Place." It is clear that Albert and Frank work together at Frank's Place.[1] On June 2, 1994, the Division refused to issue a license to Frank, citing his father's conviction and certain language of Louisiana Revised Statutes 33:4862.10 as reasons. Section 4862.10(D) provides:

> D. Every person who has or controls directly or indirectly more than a five percent ownership, income, or profit interest in an entity which has or applies for a license in accordance with the provisions of this Part, ... or who has the ability, *in the opinion of the division, to exercise a significant influence over the activities of a licensee authorized or to be authorized by this Part,* shall meet all suitability requirements and qualifications for licensees.[2]

Specifically, because the Division believed Albert had the "ability ... to [exert] significant influence over the activities" of his son, it found that Albert also had to meet the suitability requirements for obtaining a license. The Division further found that because of Albert's past conviction, he did not meet the suitability requirements, and therefore the license was denied. After being denied a license to operate video gaming devices, Frank and Albert filed this suit claiming that the state police violated (1) their first amendment right to free association, (2) their fourteenth amendment right to due process, and (3) 42 U.S.C. § 1983.[3]

■ This matter is before the Court on defendants' joint motion to dismiss. If the plaintiffs are unable to establish facts in support of their claims entitling them to relief, dismissal is proper.[4] In making this determination, the Court must "accept as true the well-pleaded factual allegations of the [Complaint] and any reasonable inferences to be

---

1. Plaintiffs allege that the Division "compelled" them to sign an affidavit preventing Albert from working at Frank's Place. *See* Pls.' Mem. Opp'n at 2 & Pls.' Compl. at 2 ¶ V. Since plaintiffs partially base their claim on this allegation, Frank and Albert Payne admit that they do (and wish to continue to) work together at Frank's Place. Therefore, the Court need not look beyond the plaintiffs' complaint for this fact.

2. La.Rev.Stat Ann. § 33:4862.10(D) (West Supp. 1995) (emphasis added).

3. Plaintiffs have voluntarily dismissed their claim under 28 U.S.C. § 1985. *See* Pls.' Mem. Opp'n at 8 ¶ 10.

4. *Burns–Toole v. Byrne,* 11 F.3d 1270, 1273 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994).

drawn from them."[5]

Accepting as true the pleaded factual allegations of the Complaint and any reasonable inferences to be drawn, the Court concludes that defendant's motion to dismiss should be granted. In reaching this decision, the Court finds this suit is totally frivolous and has no place in the federal courts. Because of the number of video poker machines and licenses which currently exist in Louisiana, and because the defendants are involved on a daily basis in determining whether to grant, deny or revoke video poker licenses, the Court has decided to write a detailed opinion on the issues raised in this case so others who wish to file similar suits in this Court will know in advance the Court's position on these issues.[6]

## I. Freedom of Association

### A. The Three Categories of Associational Rights:

■ It is difficult to tell from their opposition memorandum what constitutional right the plaintiffs contend was violated. It appears the plaintiffs argue that somehow their first amendment right to free association was violated when the Division denied Frank Payne's video gambling device license on the basis of his father's influence over him in his business and his father's failure to meet the suitability requirements for licensure. However, the plaintiffs provide absolutely no authority to support their argument that this criteria is· constitutionally defective. The plaintiffs contend that the father/son relationship is a type of relationship protected by the first amendment,[7] and then *ask:* "can it not be said that the defendants are encroaching upon Albert Payne's right of free association and his ability to earn a living ...?" The plaintiffs' "question" fails to establish a constitutional violation.[8]

■ There are three aspects to the constitutional right of association.[9] First, the constitution protects association for the purpose of engaging in types of activity expressly protected by the first amendment. Laws regulating this type of noncommercial [10] and expressive or political association must pass the court's strict scrutiny.[11]

5. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir.1994).

6. This opinion also warns others who wish to pursue similar actions in federal court of this Court's intent to impose such sanctions which are permitted under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the inherent power of the Court to impose sanctions. It is one thing for the State of Louisiana to allow video poker despite the state's constitutional mandate to suppress gambling. *See Polk v. Edwards*, 626 So.2d 1128, 1137–41 (La.1993); *but see* La. Const. art. XII, § 6(B). It is quite another thing to say every citizen in Louisiana has a constitutional right to be issued a video poker license.

7. However, this familial right to privacy does not stem from the first amendment. Instead, the constitutional source of this right is actually the fourteenth amendment. *See Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984); *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir.1993); *Kraft v. Jacka*, 872 F.2d 862, 871 (9th Cir.1989) (protection of intimate human relationships is based on the fourteenth amendment); *Mayo v. Lane*, 867 F.2d 374, 375 (7th Cir.1989) (noting that the right of familial association is based on the fourteenth amendment); *IDK, Inc. v. Clark County*, 836 F.2d 1185, 1192 (9th Cir.1988); *cf. Swank v. Smart*, 898 F.2d 1247, 1252 (7th Cir.),

cert. denied, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990) (the right of intimate association is not protected by the first amendment). *But see Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir.1988) (assuming, without directly addressing the issue, that freedom of intimate association discussed in *Roberts, supra,* is protected by the first amendment).

8. *Arnaud v. Odom*, 870 F.2d 304, 307 (5th Cir.), cert. denied, 493 U.S. 855, 110 S.Ct. 159, 107 L.Ed.2d 117 (1989) (citing *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386–87 (5th Cir.1985); *Sisk v. Levings*, 868 F.2d 159, 161 (5th Cir.1989).

9. *See* Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure 248–64 (2d Ed.1992) (providing a full discussion of these three categories and of the continuum of the right to associate).

10. *Florida Bar v. Went For It, Inc.*, —— U.S. ——, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) (intermediate instead of strict scrutiny governs the regulation of commercial speech).

11. *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston*, —— U.S. ——, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) (implying intermediate scrutiny does not apply to state law requiring private parade to include applicant be-

■ Second, individuals may seek to associate for economic or other reasons unrelated to any fundamental constitutional right. When this type of association is regulated, the law need only rationally promote an arguably legitimate government goal.[12]

■ The third category of association is protected by the concept of liberty in the due process clause and as an implicit part of the Bill of Rights guarantees. This right is connected to the fundamental right of privacy.[13] Freedom of association in this sense includes the freedom to choose one's spouse [14] and to maintain a relationship with members of one's family. Essentially, this type of private association is protected not by the First Amendment, but by the fundamental right of privacy emanating from the fourteenth amendment.[15] There are two standards that may apply to this category of associational right, and it is presently unclear which should be applied.

■ The traditional test for analyzing laws that interfere with this right of private association is "strict scrutiny." [16] Under this standard, the law must further a compelling state interest via narrowly tailored means—

that is, the least burdensome method to achieve that end. The recent case of *Planned Parenthood v. Casey*,[17] however, may have changed this standard.

In *Casey*, a plurality of the United States Supreme Court adopted the "undue burden" test as the standard to be applied in determining whether a law unconstitutionally violates a woman's right to privacy with respect to her choice to have an abortion. In order to demonstrate the unconstitutionality of a statute under *Casey*, the plaintiffs must show that the statute constituted an "undue burden" on their alleged privacy right to associate as father and son.[18] In other words, *Casey* may prohibit a regulation based on a legitimate and important state interest from placing a "substantial obstacle" to the exercise of the right to privacy. Although it is currently unclear whether *Casey* applies to non-abortion cases,[19] under the facts of this case, dismissal is nonetheless proper. Because only economic association is at issue, rational basis is the appropriate standard. Furthermore, as discussed below, the Division's application of the regulation in ques-

cause of content of applicant's message); *Florida Bar*, —— U.S. ——, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) (holding that the bar association's rules regarding lawyer solicitation met the intermediate scrutiny standard announced in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 564–65, 100 S.Ct. 2343, 2350–51, 65 L.Ed.2d 341 (1980)).

**12.** *See Roberts v. United States Jaycees*, 468 U.S. 609, 638, 104 S.Ct. 3244, 3260–61, 82 L.Ed.2d 462 (1984) (O'Connor, J., concurring); *Knapp v. Miller*, 843 F.Supp. 633, 642 (D.Nev.1993); *but see Trade Waste Mgt. Ass'n, Inc. v. Hughey*, 780 F.2d 221, 238 (3rd Cir.1985). *See also* Rotunda & Nowak, *supra* note 9.

**13.** *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 851, 112 S.Ct. 2791, 2807, 120 L.Ed.2d 674 (1992).

**14.** *Loving v. Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967).

**15.** *See supra* note 7. *See generally Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); Rotunda & Nowak, *supra* note 9.

**16.** *Moore*, 431 U.S. at 498–506, 97 S.Ct. at 1935–39 (citing a host of cases acknowledging "a private realm of family life which the state cannot

enter"). *See also Roe v. Wade*, 410 U.S. 113, 152–53, 93 S.Ct. 705, 726–27, 35 L.Ed.2d 147 (1973) and *Casey*, 505 U.S. at 851, 112 S.Ct. at 2807.

**17.** 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

**18.** *Casey*, 505 U.S. at 874, 112 S.Ct. at 2819. Instead of requiring the least burdensome means to achieve a compelling state interest, *Casey* only requires that the burden be less than substantial. *Casey*, 505 U.S. at 875, 112 S.Ct. at 2820.

**19.** The *Casey* plurality set forth the undue burden standard as one "of general application to which [it] intend[s] to adhere." *Casey*, 505 U.S. at 875, 112 S.Ct. at 2820. However, "it is unclear whether the plurality intended the 'standard of general application' to apply outside the abortion context." Sandra L. Tholen & Lisa Baird, Comment, *Con Law is as Con Law Does: A Survey of Planned Parenthood v. Casey in the State and Federal Courts*, 28 Loy.L.A.L.Rev. 971, 1029 (1995). The authors of that comment did find two cases that attempted to use *Casey*'s undue burden standard to case involving family association. *See Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir.1993) & *Herndon v. Tuhey*, 857 S.W.2d 203, 208 (Mo.1993).

tion passes the strict scrutiny standard as well as the undue burden test.[20] Therefore, this Court need not decide whether the undue burden test announced in *Casey* is the new test with regard to the right to private association.

### B. The Only Associational Right at Issue Here is "Economic Association:"

The Court agrees with the plaintiffs that a father/son relationship may be constitutionally protected under certain conditions. However, those facts are not present in this case. The Division is not regulating the father/son relationships of all families in Louisiana. Furthermore, the Division did not seek to interfere with Frank and Albert's *private* relationship.[21] It is clear that the plaintiffs may live together, pray together, dine together, play together, work together, and do all those things fathers and sons traditionally do together.[22] In fact, the two may engage in any legal activity, provided they meet the

required standards. If neither Albert nor Frank qualified for a driver's license, they could hardly complain that their father/son relationship is impaired because they cannot legally ride alone in an automobile together.[23] Likewise, their private relationship is not effected merely because they do not meet the licensure requirements for a video poker license. Thus, Louisiana has not impaired Albert and Frank's private relationship and has not regulated Frank and Albert's alleged *privacy right* to associate as father and son.[24]

■ The plaintiffs have, as they may, voluntarily chosen to work together at Frank's Place. But, because of that choice, they do not qualify under the video gaming device licensing statute to operate video poker machines at that bar. Therefore, there is only one freedom of association involved in this case—economic association. Consequently, Louisiana Revised Statutes 33:4862.10, the Division's application of it, and the Division's regulations need only meet the rational ba-

20. *See infra* Part I–D.

21. The affidavit allegedly forced upon Albert and Frank Payne by the State Police supports the position that the Division was only concerned with Albert's association with "Frank's Place," not Frank as his son. The Division justified denying Frank a license for the second time on the basis of Albert's continued participation at "Frank's Place." Additionally, the Division had several other reasons regarding Frank Payne's personal qualifications. Because he had been dishonest in the application process, the Division was justified in denying Frank's license on the independent basis of Frank's lack of candor and/or ability to comply with the gambling licensing statutes. However, for purposes of this motion to dismiss, the court may not consider these facts, as they are outside the complaint. Because plaintiffs fail to allege that the Division interfered in any specific way with their *private* relationship, the Court did not need to consider these additional facts. Therefore, the Court did not convert the motion to dismiss to a motion for summary judgment pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

22. This purely illustrative list of activities should adequately answer the plaintiffs' indolent question: "What more fundamental encroachment could there be on the right to free association than trying to dictate when, where, and how a father and son can and cannot interact?" Pls.' Mem. Opp'n at 4. The Division was only concerned with Albert's influence over and control

of "Frank's Place" and his prior conviction for a gambling violation.

23. *See* La.Rev.Stat.Ann. § 32:401–431 (West 1989 & Supp.1995). *See also LeBrun v. State of Georgia,* 255 Ga. 406, 339 S.E.2d 227, 228 (1986); *Wells v. Malloy,* 402 F.Supp. 856, 860 (D.Vt. 1975); *Quetawki v. Prentice,* 303 F.Supp. 737, 739 (D.N.M.1968). *See also* cases cited *infra* note 35.

24. The undue burden test announced in *Casey* is more easily articulated than applied. Specifically, it is unclear what level of interest the state must have before it is allowed to place any "less than substantial" obstacle to the exercise of a given right to privacy. The opinion uses the following terms to describe the state's interest in that case: legitimate, important, substantial, and profound. Because this Court finds that Louisiana's interest in regulating its gambling industry is in fact legitimate, important, substantial and perhaps even profound, it concludes that the state is permitted to place a "less than substantial" burden on the privacy right to associate as father and son with respect to the issuance of video gaming device licenses. *See infra* note 29 and accompanying text (discussing Louisiana's interest in regulating gambling). The Court emphasizes that plaintiffs have not alleged nor does it appear that Louisiana has placed a burden on Albert and Frank's private relationship as father and son. The Court only mentions the state's interest in order to properly use the "undue burden" analysis set forth in *Casey.*

sis/legitimate governmental goal standard of review.

■ Even if the strict scrutiny or undue burden standard applied to this case, the regulation and the Division's application of it clearly pass both. Therefore, the regulation and the Division's application also pass the rational basis standard of review.

## C. Application of *Casey's* "Undue Burden" Test:

For the reasons stated above regarding the negligible degree to which the state has burdened the plaintiffs' father/son relationship, the Court finds that the defendants have placed no "substantial obstacle"[25] to the exercise of the plaintiffs' right to privately associate as father and son. Therefore, under *Casey*, Louisiana has not placed an "undue burden" on that right.

## D. Application of Strict Scrutiny and Rational Basis Standards:

Under the strict scrutiny standard, Louisiana has a legitimate and compelling interest to regulate the gambling industry.[26] Indeed, this regulation should govern the issuance of licenses, the suspension of those who obtain licenses and the procedures for handling the revenue derived from the gambling industry. In *Medina v. Rudman*[27] the First Circuit held that "[g]ambling is traditionally suspect in our society, and investment in such an enterprise, when permitted at all, is *plainly open to the strictest kind of supervision.*"[28]

The state has a legitimate and compelling interest in (1) protecting those citizens who wish to gamble, (2) the revenue derived from the industry, and (3) investigating and determining the suitability of persons who desire licenses or who have the ability to significantly influence the activity of those directly applying for a gaming license. The licensing requirements at issue unquestionably promote the above interests. They ensure the integrity of the industry, assure the public confidence in the ability of the State Police to sufficiently regulate the industry, and exclude those persons who are not qualified to engage in the gambling industry. Likewise, the regulation and the Division's application thereof are narrowly tailored to promote those cautionary, protective and compelling interests. The plaintiffs in this case admit that Albert was convicted of *operating an illegal gambling business*. If ex-felons were permitted to operate gambling facilities across Louisiana, the industry would, *inter alia*, appear corrupt and unregulated, be much less trusted by the citizens of the state, and consequently generate less income.[29] Refusal to issue a license to person convicted of operating an illegal gambling business therefore achieves the above interests with precision. Thus, regulations that prevent those convicted of felony-level charges of illegal gambling from obtaining a video poker license clearly meet the strict scrutiny standard, the undue burden test, and, of course, the rational basis standard, and are constitutional and valid.

---

**25.** *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 875, 112 S.Ct. 2791, 2820, 120 L.Ed.2d 674 (1992).

**26.** The Court emphasizes that the correct standard applying to this case is the rational basis standard. The Court only applies the strict scrutiny standard to illustrate the ridiculousness of the plaintiffs' claims.

**27.** 545 F.2d 244 (1st Cir.1976), *cert. denied*, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177 (1977).

**28.** *Medina v. Rudman*, 545 F.2d at 251 (emphasis added). *See also infra* text accompanying notes 47–49.

**29.** LA.REV.STAT.ANN. § 33:4862.6(A)(1) (West Supp. 1995) provides, in part:

A. (1) The legislature hereby recognizes the importance of a controlled gaming industry to the development of the economy of the state of Louisiana. The legislature further recognizes that the success and growth of gaming are dependent upon public confidence and trust that gaming activities and particularly video draw poker gaming activities are conducted honestly and are free from criminal and corruptive elements. The state of Louisiana has a legitimate interest in providing strict regulation of all persons, practices, associations, and activities related to the operation of licensed [sic] establishments licensed to offer video draw poker gaming devices and supplies, in order to maintain public confidence and trust in the video draw poker gaming industry.

## II. Neither Property nor Liberty Interest at Stake:

### A. No Property Interest in Obtaining Video Poker License—

 There must be either a property or a liberty interest at stake for the plaintiffs to successfully claim a violation of their right to procedural due process.[30] "[Property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source *such as state law.*"[31] Under the law of Louisiana, there is no property interest in obtaining a video gaming license. Louisiana Revised Statutes 33:4862.1(D) provides: "Any license applied for ... under the provisions of this Part is *a pure and absolute privilege, the awarding, denial, or withdrawal of which is solely within the discretion of the division....*"[32] Therefore, the plaintiffs do not enjoy a statutory right to operate a video gaming establishment.

 Furthermore, the mere fact that Albert was granted a restoration of rights does not preclude the Division from considering his conviction under the facts of this case since his conviction involved illegal gambling activities and because there is no right to a video poker license. The Governor's act at best could only restore Albert's pre-conviction rights,[33] and it would be utterly absurd to read the act as granting Albert Payne a statutory right to possess a video poker license. Furthermore, since Frank Payne, Albert Payne, and "Frank's Place" have not held such a license they also have no property interest in any particular video gaming license.

### B. No Liberty Interest to Earn a Living by Operating Video Gaming Establishment:

 The right to pursue the common occupations of life has been acknowledged by the Fifth Circuit as a protected liberty interest.[34] Although the Fifth Circuit has not explicitly defined the contours of that right, it is clear that the state may require certain standards of qualifications before it permits a person to practice a given trade or profession.[35] It is only required that any qualifica-

---

30. It must be made abundantly clear that the State of Louisiana has not suspended or canceled the plaintiffs' liquor license. Plaintiffs can continue to operate and derive income from their bar. The State has never granted the plaintiffs' license to operate video poker machines.

Plaintiffs do not specify whether the denial of their license amounted to a violation of their procedural or their substantive due process rights. Nonetheless, since this Court concludes that no right guaranteed by the bill of rights or by the fourteenth amendment has been violated, only procedural due process is at issue. Therefore, relief could also be precluded by *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Specifically, plaintiffs have an available state law "post-deprivation remedy" under Louisiana Civil Code article 2315, and consequently, they present no federal claim.

31. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (emphasis added).

32. La.Rev.Stat.Ann. § 33:4862.1(D) (West Supp. 1995) (emphasis added).

33. *See United States v. Dupaquier*, 907 F.Supp. 951 ,(M.D.La.1995) (publication forthcoming) (providing a discussion of the effect of a restoration of rights with respect to the right to bear arms). *See also Dixon v. McMullen*, 527 F.Supp.

711 (N.D.Tex.1981) where that district court wrote:

> [T]he Governor cannot overrule the judgment of a court of law. He has no "appellate" jurisdiction. There can be no doubt but that a final judgment was entered against the ex-felon. Regardless of the post judgment procedural maneuvering, a final conviction does not disappear. A pardon implies guilt. Texas Courts may forgive, but they do not forget. The fact is not obliterated and there is no "wash." Moreover, the granting of a pardon does not in any way indicate a defect in the process. It may remove some disabilities, but does not change the common-law principle that a conviction of an infamous offense is evidence of bad character. *Dixon*, 527 F.Supp. at 718 (citations omitted) (footnotes omitted).

34. *Cowan v. Corley*, 814 F.2d 223, 227 (5th Cir. 1987); *Phillips v. Vandygriff*, 711 F.2d 1217, 1222 (5th Cir.1983), *reh'g denied in part and granted in part*, 724 F.2d 490 (5th Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 94, 83 L.Ed.2d 40 (1984); *Ferrell v. Dallas Indep. Sch. Dist.*, 392 F.2d 697, 703 (5th Cir.), *cert. denied*, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968).

35. *See Schware v. Bd. of Bar Exams. of N.M.*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). *See Midnight Sessions, Ltd. v. City of*

tion have a rational connection with (1) the applicant's fitness or capacity to serve in that trade or profession and (2) an arguably legitimate state interest in regulating that trade or profession.[36] If a state can and does choose to regulate a given occupation in a particular manner, it may also be required to provide notice and opportunity to be heard pursuant to the minimum requirements of procedural due process,[37] and, of course, it must not be defamatory in its application of the standards.[38]

█ For the reasons set forth above regarding the right to associate as father and son, the Court concludes that requiring citizens to meet certain licensure requirements before being issued a video gaming license does not violate any right to earn a living protected by the constitution.[39] The state's interest in regulating its gambling industry is more than legitimate, and the licensing scheme clearly and rationally promotes that interest.

█ Lastly, the plaintiffs, by way of another question,[40] allege that they have somehow been so stigmatized as a result of the Division's refusal to issue them a license, that their ability to earn a living has been unconstitutionally impaired. This claim, based on the allegation that the Division used defamatory information in denying the plaintiffs' video poker license, is also meritless. Many cases discussing the right to earn a living involve actions that wrongly scar a person's reputation and consequently impair that person's ability to work for and earn a living.[41] To be successful on the "stigma" claim, a plaintiff must satisfy the "stigma-plus" test announced in *Paul v. Davis*.[42] *Paul* and its progeny require the plaintiffs, at the least, to establish the following: (1) that there is in fact a "stigma," (2) that the "stigma was *caused* by a *false communication*," and (3) that there was harm to *some interest other than reputation alone*.[43] Here, the plaintiffs admit that Albert Payne was convicted of a felony. Therefore, because the plaintiffs admit that the information was *true*, they cannot recover under the "stigma-plus" test.[44] Further, the Court observes that if any stigma effecting Albert's ability to earn a living exists, it was not caused by the Division's refusal to issue a

*Philadelphia*, 945 F.2d 667 (3d Cir.1991), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992) (holding that denial of dancing hall license for legitimate government reasons not taking of property or due process violation); *Richardson v. Town of Eastover*, 922 F.2d 1152 (4th Cir.1991) (holding that because business license to operate nightclub issued at discretion of town for public convenience and necessity, no property deprivation when not renewed); *Martinez–Velez v. Simonet*, 919 F.2d 808 (1st Cir. 1990); *Brown v. City of Lake Geneva*, 919 F.2d 1299 (7th Cir.1990) (holding that ordinance precluding issuance of liquor license to museum restaurant not irrational under equal protection clause); *Scott v. Department of Public Safety Excise Div.*, 792 F.Supp. 666 (E.D.Mo.1992) (holding that denial of liquor license to applicant who did not supply all documents is constitutional); *Conrad v. County of Onondaga Exam. Bd. for Plumbers*, 758 F.Supp. 824 (N.D.N.Y.1991) (holding that failure to qualify for plumber's license does result in property deprivation).

36. *Schware*, 353 U.S. at 239, 77 S.Ct. at 756; *Dixon*, 527 F.Supp. at 720. The Fifth Circuit, in *Blackburn v. City of Marshall*, 42 F.3d 925, 941 (1995) (emphasis added), stated that *"where not affirmatively restricted by reasonable laws or regulations of general application,* private individuals normally have the right to engage in private employment or any of the common occupations of life with or for those private persons who see

fit to engage, patronize, or do business with them."

37. *Phillips*, 711 F.2d at 1222–23 & n. 5.

38. *Paul v. Davis*, 424 U.S. 693, 708–10, 96 S.Ct. 1155, 1164–65, 47 L.Ed.2d 405 (1976); *Dennis v. S & S Consol. Rural High School Dist.*, 577 F.2d 338 (5th Cir.1978).

39. For example, license examinations for lawyers, doctors, truck drivers, airline pilots and train engineers are just a few constitutionally permissible restrictions on professions and trades. *See* case cited *supra* note 35.

40. "Can it not be said that the honesty of both plaintiffs is not put into question?" Pls.' Mem. Opp'n at 4 ¶ 2.

41. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

42. 424 U.S. at 709–10, 96 S.Ct. at 1164–65. *See also Dennis*, 577 F.2d at 342.

43. *Phillips v. Vandygriff*, 711 F.2d 1217, 1221 (5th Cir.1983) (emphasis added).

44. *See Dennis*, 577 F.2d at 342 & n. 2.

license, but by Albert's actions that led to his conviction for operating an illegal gambling business. Therefore, neither the plaintiffs' ability to earn a living nor any procedural due process rights have been unconstitutionally impaired.

### C. Gambling is not a "Common Occupation:"

This Court also finds that the right to earn a living is not at issue in this case. The jurisprudence indicates that this right only honors "common occupations." [45] In *Truax v. Raich*,[46] the United States Supreme Court held: "It requires no argument to show that the right to work *for a living in the common occupations of the community* is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." [47]

Several years later, the First Circuit in *Medina v. Rudman*[48] concluded that a individual's interest in participating in a gambling establishment is not a "fundamental or natural" right. The First Circuit wrote:

> Over fifty years ago, in Meyers v. Nebraska, the Supreme Court described the right "to engage in any of the common occupations of life" as one of the fundamental privileges "long recognized at common law as essential to the orderly pursuit of happiness by free men." Meyer has recently appeared mostly in dissenting opinions; but even assuming its continued vitality, we do not consider racetrack ownership to

be one of life's "common occupations". [sic] ...

We think the state, under its police powers, is entitled, if it elects, to issue racetrack licenses, and to regulate participation thereunder, on a discretionary basis as it has chosen to do here. Given the social evils associated with gambling and the state's revenue interests, the state's choice of means in the selection of licensees is entitled to prevail over the private interests of potential investors.[49]

Relying on *Medina*, the court in *Ziskis v. Kowalski*[50] also concluded that because gambling was not a "common occupation," it was not entitled to protection provided by some independent "right to earn a living." Finding an analogy to cases involving the right to associate and the definition of "family" in certain zoning ordinances, the *Ziskis* court wrote:

> These courts' characterization of only certain occupations as "common occupations" and therefore a protected liberty interest can be analogized to the Supreme Court's definition of a family by its living arrangements in *Moore v. East Cleveland*[, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531] and *Village of Belle–Terre v. Boraas*[, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797]. Similarly, certain professions have been held to constitute common occupations, while others, like gambling, traditionally a suspect activity, have not.[51]

Because the occupation is uncommon in that sense, the Court also finds that the procedural protections of the due process clause do not come into play.

45. Although several cases find no right exists if the occupation is not a "common" one, this Court questions whether the historical or current "common" nature of an occupation should define a person's liberty interest in pursuing it. Instead, the nature of the occupation is directly related to the degree of the state's interest in regulating it. Thus, in applying the rational basis/legitimate interest analysis, the more a profession or trade presents a risk to the public or requires the public confidence, the more legitimate the state's interest. The high level of interest Louisiana has in permitting people to enter its gambling industry is what makes gambling an "uncommon occupation." Therefore, in the proceeding analysis, the Court agrees with other courts that gambling is not a "common occupation," but does so on the basis of the state's great interest in regulating it and corresponding right to place great restrictions on it and set high standards for those desiring to profit from it.

46. 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915).

47. *Truax v. Raich*, 239 U.S. at 41, 36 S.Ct. at 10 (emphasis added).

48. 545 F.2d 244 (1st Cir.1976), *cert. denied*, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177 (1977).

49. *Medina v. Rudman*, 545 F.2d at 251 (citation omitted) (footnote omitted).

50. 726 F.Supp. 902, 911 (D.Conn.1989).

51. *Ziskis v. Kowalski*, 726 F.Supp. at 911 (citations omitted).

Therefore, because this Court finds that gambling is subject to the strictest regulation, it too concludes that gambling is not a "common occupation" within the meaning of the right to earn a living.[52] Consequently, neither Frank nor Albert Payne have the right to earn a living by operating a video gaming establishment. Thus, they are not owed the procedural protections provided by the due process clause of the fourteenth amendment.

### III. PROCEDURAL DUE PROCESS

■ The plaintiffs have not alleged that the application process is procedurally defective under the due process clause. Nonetheless, because the Court has concluded that neither a property nor a liberty interest is at stake in this case, the procedural safeguards provided by the due process clause of the fourteenth amendment do not apply. And, even if they did, the Court would find that the minimum requirements of notice and opportunity to be heard[53] are satisfied. Louisiana Revised Statutes 33:4862.10(E) provides the plaintiffs the right to (1) an administrative hearing with notice and (2) subsequent appeal to the Nineteenth Judicial District Court.[54]

■ It is also clear that a violation of state law is not ground for relief under 42 U.S.C. § 1983. Nor should the federal court be substituted as an appellate court merely because the plaintiffs filed such under 42 U.S.C. § 1983. The plaintiffs have adequate rights under state law to appeal the Divi-

sion's decision denying them a video poker license. This Court will not interfere with the defendants' decision to deny the plaintiffs a video poker license absent a violation of the constitution of the United States. There is no such violation under the facts of this case.

■ The court has considered all of the arguments of the parties whether specifically discussed herein or not. The plaintiffs attempt to use this federal court to obtain a video poker license was a gamble at best, and their chance of winning this suit was a long shot. With such poor odds, this loss should come as no surprise to the plaintiffs. Lastly, the Court reiterates that lawsuits filed in federal courts are not games of chance. The filing fee is not an "ante" that permits the plaintiffs to play just any hand and hope to settle or win. Although in the casino, a gambler may hold and bet on frivolous hands, a litigant may not do so in this court. Rule 11 of the Federal Rules of Civil Procedure requires that a party make a reasonable inquiry into the law and facts before filing a suit. This obligation continues during the pendency of the suit. The odds are great that those who violate Rule 11 and 28 U.S.C. § 1927 may get something they did not bet on—a monetary or other sanction. The Court believes it has every right to impose sanctions on the plaintiffs in this case. However, the Court believes that the Court's admonishment to the plaintiffs and their counsel and this dismissal of the case are sufficient sanctions at this time. Defendants' motion to dismiss is granted. Judgment

---

52. *See supra* note 45.

53. *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See also Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (declaring that due process is a flexible standard which requires such procedural safeguards as a particular situation demands).

54. LA.REV.STAT.ANN. § 4862.10(E) (West Supp. 1995) provides, in part:

E. A person whose application for a license has been denied ... has the right to a hearing before the division. The hearing must be conducted in accordance with the provisions of the Administrative Procedure Act [LA REV.STAT.ANN. § 49:950–971 (West 1989 &

Supp.1995)]. All parties, including the division, shall have the right to appeal any adverse ruling to the Nineteenth Judicial District Court.
The Administrative Procedure Act specifically requires notice. Section 49:955 of that Act provides:

A. In an adjudication, all parties who do not waive their rights shall be afforded an opportunity for hearing after reasonable notice.
B. The notice shall include:
(1) A statement of the time, place, and nature of the hearing;
(2) A statement of the legal authority and jurisdiction under which he hearing is to be held;
(3) A reference to the particular sections of the statutes and rules involved;
(4) A short and plain statement of the matters asserted.

shall be entered dismissing this suit with prejudice at the plaintiffs' costs.

Therefore:

**IT IS ORDERED** that the defendant's motion to dismiss be and it is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that this case be dismissed with prejudice. Judgment shall be entered accordingly.