LIAN W. CLAIBORNE, Judge Pro Tern.
This appeal involves the denial of an application for a video gaming license. The Louisiana State Police, Video Gaming Division (the Division), recommended that the video gaming application of Twin B. Casinos, Inc., d/b/a America’s Sports Bar (the business), be denied, because the sole owner of the business provided false and/or inaccurate responses concerning prior arrests on the application. The business owner, Mr. Doyle Copell (the appellant), requested an administrative hearing before a hearing officer for the Louisiana Gaming Control Board (the Board). The hearing officer ruled that the appellant should be granted a video gaming license. The Division filed an appeal with the *997 Board, and after a hearing the decision of the hearing officer was reversed, thereby denying the appellant’s license application. The appellant petitioned for judicial review of the Board’s decision in the district court, and requested a declaratory judgment declaring La. R.S. 27:310 and sections of the video gaming application unconstitutional. The district court affirmed the denial of the license application and denied the declaratory judgment. The appellant now appeals the decision of the district court. We affirm.
FACTS
The relevant facts are not in dispute. On October 11, 1988, in Iberia Parish, the appellant was arrested and charged with terrorizing, a crime punishable by imprisonment up to 15 years. See La. R.S. 14:40.1. The appellant was never prosecuted for the alleged offense. He discovered the arrest was still on his record when he filed for a liquor license for his place of business in 1998. The appellant subsequently petitioned for and was successful in having his record expunged on September 10, 1998. Public record of the arrest was expunged and erased pursuant to La. R.S. 44:9.
IsShortly after the expungement of the arrest, on November 17, 1998, the appellant filed a video gaming application with the Board, in order to obtain a Type 1 Video Gaming License. In the application, the appellant indicated that he had never been arrested, charged or summoned to answer for any criminal offense or violation for any reason whatsoever, regardless of the disposition or final outcome of the arrest or charge. Question 11(A) of the video gaming application asked in pertinent part:
Has any owner (sole proprietorship), ... ever been arrested, charged, indicted, or summoned, though never physically arrested, to answer for any criminal offense or violation for any reason whatsoever, in any state, country, or other jurisdiction, regardless of the disposition or final outcome of the arrest, charge, indictment, or summons? All arrests, charges, indictments, or summons must be included, even if the final result was dismissal, nolle prosecution, or acquittal. All convictions must be included, even if the final result was dismissal, none prosecution, or acquittal, and all convictions must be included, even if the conviction has been expunged from conviction records through either Article 893, Article 894, or R.S. 44:9, regardless of whether someone has previously stated to a person that a conviction expunged through either Article 893, Article 894 or R.S. 44:9, need not be disclosed. (Emphasis added.)
The appellant also responded in the application that he had never had a civil or criminal record expunged or sealed by any court. Question 11(E) of the video gaming application asked in pertinent part:
Has any owner (sole proprietorship), ... ever had a civil or criminal record expunged either by Article 893, Article 894, or R.S. 44:9, or sealed by any other court order in any state, country, or other jurisdiction? If Yes, provide details on a separate sheet of paper. (Emphasis added.)
Master Trooper Lionel Meyers of the Division conducted a background investigation regarding the appellant’s application for the video gaming license. He discovered the appellant’s prior arrest and expunged record. Trooper Meyers interviewed the appellant on January 25, 1999, at the appellant’s place of business. In the interview, Trooper Meyers reviewed the application with the appellant to make sure it was correct. A few changes (the name of a bar employee and the | ¿business’ federal tax identification number) were made; *998 however, the appellant did not alter his “No” responses to Questions 11(A) and (E) on the application. Various other questions were also dated and initialed by the appellant at Trooper Meyers’ request. Trooper Meyers read the questions regarding prior arrests and expunged records to the appellant, and emphasized the word “expunged.” The appellant indicated to Trooper Meyers that he understood the questions and that he had never been arrested and did not have anything else to add. Trooper Meyers requested that the appellant initial and date Question 11(A) and initial Question 11(E) on the original application. After the interview, Trooper Meyers recommended that the appellant’s application for the video gaming license be denied, because the investigation had revealed the undisclosed October 11, 1988 arrest and charge for terrorizing, along with the undisclosed September 10, 1998 order to expunge the arrest and charge from the public records. The recommendation for denial was based on the appellant’s lack of honesty in failing to disclose the prior arrest and the expunged record.
By letter dated May 13, 1999, the appellant was notified of the recommendation that his application be denied. He timely requested an administrative hearing before a hearing officer of the Board. The administrative hearing took place on August 31, 1999, wherein both the appellant and Trooper Meyers testified. The hearing officer ruled immediately upon conclusion of the testimony to grant the appellant the video gaming license. The hearing officer based his ruling on his interpretation of La. R.S. 27:310(A), which mandates ineligibility for gaming licenses when applicants have been convicted, within ten years prior to the date of the application for the license, of an offense punishable by imprisonment for more than one year. The appellant’s arrest was more than ten years prior to the date of the application, therefore the hearing officer ruled that the | ^appellant should not be held to divulge information on the application regarding that arrest.
The Division filed an appeal with the Board, and on January 19, 2000, the Board reversed the decision of the hearing officer, thereby denying the appellant’s license application. The Board found the hearing officer’s application of La. R.S. 27:310 to be erroneous, stating “[a] conviction ten years prior to application may not be an automatic disqualification but is required to be disclosed and can be considered in determining suitability, as can an arrest or a series of arrests, convictions, etc. under La. R.S. 27:310.” The Board found the appellant to be “unsuitable under La. R.S. 27:310(B) for his lack of honesty in knowingly making a false statement on his application.” The appellant appealed the Board’s decision to the district court and also challenged the constitutionality of sections of the application and of La. R.S. 27:310. The district court held a hearing on the matter and after hearing the argument of counsel and reviewing the transcript of the administrative hearing, the entire record, and the applicable law, denied the petition for declaratory judgment seeking to have sections of the gaming application and La. R.S. 27:310 declared unconstitutional. The district court then found the Board’s factual determinations and application of the law were neither arbitrary nor capricious and affirmed the Board’s denial of the appellant’s video gaming license. The instant appeal followed.
ASSIGNMENTS OF ERROR
The appellant urges two errors by the district court: (1) error in failing to reverse the decision of the Board denying the video gaming license; and (2) error in failing to declare certain provisions of the Louisiana Gaming Control Law and the *999 video poker license application questions unconstitutional.
J^STANDARD OF REVIEW
The Board has regulatory authority, control and jurisdiction, including investigation and licensing, over all aspects of gaming activities and operations as authorized pursuant to the Louisiana Gaming Control Law and the Louisiana Administrative Procedure Act. See La. R.S. 27:15(B)(1), La. R.S. 27:24(A)(1) and La. R.S. 49:950, et seq. Any person adversely affected by an action or decision of the Board may appeal to the Nineteenth Judicial District Court in accordance with the provisions of the Administrative Procedure Act (APA). See La. R.S. 27:26, La. R.S. 27:89, and La. R.S. 27:310(E).
The APA specifies that judicial review shall be confined to the record, as developed in the administrative proceedings. La. R.S. 49:964(F). The district court may affirm or remand the agency decision. However, reversal or modification of the agency decision is restricted to instances in which substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency’s statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or an abuse of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court, with due regard to the agency’s determination of credibility issues where it had the opportunity to observe first-hand the demeanor of the witnesses. La. R.S. 49:964(G). An aggrieved party may obtain a review of any final judgment of the district court by appeal to the appropriate circuit court of appeal. La. R.S. 49:965.
On legal issues, the reviewing court gives no special weight to the findings of the administrative agency, but conducts a de novo review of questions of law and renders judgment on the record. Louisiana Automotive Financial Services, Inc. v. Department of Economic Development, Office of Financial Institutions, 98-0981, p. 4 (La.App. 1st Cir.5/14/99), 743 So.2d 217, 219. We are free to make our own determinations of the correct legal meaning of the appropriate statutes and render judgment on the record. Southlake Development Co., et al. v. Secretary of Dept. of Revenue and Taxation for State of La., 98-2158, p. 3 (La.App. 1st Cir.11/5/99), 745 So.2d 203, 205, writ denied, 99-3405 (La.2/4/00), 754 So.2d 235. Appellate review of questions of law is simply review of whether the lower court was legally correct or legally incorrect. Premier Games, Inc. v. State, Dept. of Public Safety and Corrections, Video Gaming Division, 99-0624, p. 3 (La.App. 1st Cir.5/12/00), 761 So.2d 707, 710.
ANALYSIS

ASSIGNMENT OF ERROR NO. 1

Our review in the instant case concerns a purely legal question of the proper interpretation of La. R.S. 27:310 as it applies to the essentially undisputed facts. The appellant acknowledged he was fingerprinted and photographed in connection with questioning by the Iberia Parish Sheriffs Office on October 11, 1988; however he was never prosecuted for the alleged offense of terrorizing. The appellant also acknowledged that after discovering the October 11,1988 arrest was still on his record when he applied for a liquor license for his business, he requested the aid of his lawyer to have the arrest expunged from his record. The appellant admitted that he did not disclose the arrest and expunged record when he answered ques *1000 tions on the video gaming license application and when Trooper Meyers reviewed his application with him.
Our review of La. R.S. 27:310 reveals that the statute clearly requires that applicants for video gaming licenses demonstrate suitability (i.e., good character, honesty and integrity) for licensing. La. R.S. 27:310 provides, in pertinent part:
A. No person may be eligible to apply or be granted a license under the provisions of this Chapter if he has been convicted |«in any jurisdiction of any of the following offenses within ten years prior to the date of the application ...:
(1) Any offense punishable by imprisonment for more than one year.
[[Image here]]
B. (1) No person shall be granted a license under the provisions of this Chapter unless the applicant has demonstrated to the division that he is suitable for licensing. For purposes of this Chapter, suitability means the applicant or licensee is:
(a) A person of good character, honesty, and integrity.
(b) A person whose prior activities, arrest or criminal record if any, reputation, habits, and associations do not pose a threat to the public interest of this state or to the effective regulation of video draw poker, and do not create or enhance the dangers of unsuitable, unfair, or illegal practices, methods, and operations in the activities authorized by this Chapter and financial arrangements incidental thereto.
(c) Likely to conduct business as authorized by this Chapter in complete compliance with the provisions of this Chapter.
(d) Not prohibited from making application or disqualified from licensure under the provisions of Subsection A of this Section.
(e)A person who does not owe the state or local governing authority of the parish or municipality in which the establishment is located any delinquent sales taxes, penalties, or interest, excluding items under formal appeal or protest as provided by law.
(2) An applicant who is not disqualified from making application or licen-sure as a result of Subsection A of this Section shall still be required to demonstrate to the division that he otherwise meets the remaining requirements for suitability, particularly those contained in Subparagraphs (l)(a), (b), and (c) of this Subsection. Evidence of or relating to an arrest, summons, charge, or indictment of an applicant, or the dismissal thereof, shall be considered by the division even if the arrest, summons, charge, or indictment results in acquittal, deferred adjudication, probation, parole, or pardon. (Emphasis added.)
The appellant is the sole owner of the business for which he was attempting to obtain a gaming license. As sole owner, the appellant had the obligation to demonstrate his “suitability” for licensing. See La. R.S. 27:310(D). In La. R.S. 27:310(B)(2), it is clearly mandated that evidence of arrests must be considered by the Division when reviewing suitability requirements, without regard to the | ¡puteóme or timing of the arrests in relation to the application. The appellant would have been automatically disqualified from holding a gaming license if he had been convicted of the offense within ten years of the date of the application. La. R.S. 27:310(A). However, the statute does not limit the suitability requirements to a ten-year time frame prior to the date of application. The Division is allowed to review an applicant’s entire criminal history. La. R.S. 27:310(B)(2). Therefore, the entire criminal record is relevant, not just *1001 the ten years prior to the date of the application. La. R.S. 27:310(B)(1) and (2) mandate that the applicant’s entire criminal record be disclosed and considered before a licensing decision is made. The hearing officer erred in restricting the appellant’s renewable criminal history to ten years prior to the date of the application. Therefore, the Board correctly reversed the finding of the hearing officer, and the district court did not err when it affirmed the ruling of the Board denying the appellant’s license application. The Board’s finding that the appellant was not suitable for licensing because of his lack of honesty in knowingly making a false statement on his application is supported and sustainable by a preponderance of the evidence presented at the administrative hearing. We cannot say that the Board was arbitrary or capricious in its findings, nor did it abuse its discretion when it reversed the hearing officer’s decision. We find no merit to the appellant’s first assignment of error.

ASSIGNMENT OF ERROR NO. 2

Appellant alleges that the questions about past arrests on the video gaming license application and La. R.S. 27:310 are unconstitutional. We disagree.
Statutes enacted by the Legislature are presumed to be constitutional, and a party challenging the constitutionality has the burden of establishing that the statute violates a specific constitutional provision. Louisiana Municipal Association v. State, 2000-0374, p. 5 (La.10/9/00), 773 So.2d 663, 666-667.
I mLouisiana has a clear, legitimate and compelling interest in regulating the gaming industry. The Legislature has provided for the strict regulation of the gaming industry in La. R.S. 27:2. See also La. R.S. 27:306(A)(1). Furthermore, the Legislature has explicitly provided that a video gaming license is a pure and absolute revocable privilege and not a right, property or a protected interest under the constitutions of either the United States or the state of Louisiana. See La. R.S. 27:2(B); La. R.S. 27:301(D).
The Louisiana Gaming Control Law (the Law), found in Title 27 of the Louisiana Revised Statutes, establishes a typical regulatory scheme in furtherance of the public policy of the state concerning gaming. The Law assigns to the Division the responsibility to promulgate rules and regulations concerning the licensing process. La. R.S. 27:301(B)(6); La. R.S. 27:308(A). It also authorizes the Division to deny, condition, suspend, or revoke licenses, to levy fines, and to inspect all premises where video gaming devices are offered for play. La. R.S. 27:308(B), (E)(1). In addition, the Law defines criminal penalties for unauthorized use of video gaming devices and prescribes detailed suitability requirements for licensees. La. R.S. 27:309; La. R.S. 27:310. The Law resembles other licensing schemes long characterized in the jurisprudence as valid exercises of state police powers. See Cleveland v. United States, 531 U.S. 12, 121 S.Ct. 365, 371, 148 L.Ed.2d 221 (2000).
The state of Louisiana’s authority to select video gaming licensees rests upon the state’s right to exclude applicants deemed unsuitable to run video gaming operations. The state has a legitimate and compelling interest in protecting citizens who wish to gamble, as well as investigating and determining the suitability (character, honesty and integrity) of persons who desire video gaming licenses. The licensing requirements ensure the integrity of the industry, assure public confidence in the ability of the Division to sufficiently regulate the industry, and | n exclude those persons who are not qualified to engage in the gaming industry. See Payne v. Fontenot, 925 F.Supp. 414, 421 (M.D.La.8/16/95). The *1002 video gaming application also promotes these cautionary, protective and compelling state interests. Thus, regulations that require certain licensure requirements before being issued a video gaming license do not violate any right protected by the constitution. The state’s interest in regulating its gaming industry is legitimate, and the licensing scheme clearly and rationally promotes that interest. Payne, 925 F.Supp. at 423. Therefore, we find the licensing requirements for a video gaming license, as well as the questions on the application for the license, to be valid and constitutional.
Appellant also contends he was subjected to excessive punishment in violation of the Eighth Amendment to the United States Constitution when he was denied the video gaming license because of the prior arrest. However, appellant was not “punished” for any crime when he was denied the license. In this case, there is no “sentence” to review as being excessive. Appellant was denied a video gaming license because of his dishonesty in failing to disclose his prior arrest and expungement of his record. As we previously outlined, the state’s interest in denying video gaming licenses to unsuitable applicants is legitimate, and there is no constitutional violation in the license application process.
To claim the protections of constitutional due process, the appellant must show the existence of some property or liberty interest that has been adversely affected by state action. Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330, 334 (La.1980). Property interests are not created by the Constitution; rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Under Louisiana law, there is no property interest in obtaining a video gaming | ^license. See La. R.S. 27:301(D). Therefore, the appellant has no statutory right to obtain a video gaming license. See Payne, 925 F.Supp. at 422. Furthermore, the requirements of notice and opportunity to be heard provided for in the licensing process meet all constitutional procedural due process requirements. La. R.S. 27:310(E) provides the appellant the right to an administrative hearing with notice and subsequent appeal to the Nineteenth Judicial District Court. We find no constitutional due process violation under the facts and procedural history in this case. Therefore, appellant’s second assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we reject the appellant’s arguments, and affirm the May 8, 2000 judgment of the district court upholding the decision of the Board denying appellant’s video gaming license. We further affirm the district court’s denial of appellant’s petition for declaratory judgment. Costs of this appeal are to be paid by appellant, Doyle Copell.
AFFIRMED.